## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | No. 14-3106-02-CR-S-MDH |
| **KENNA HARMON**, | |
| Defendant. | |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties

described below have entered into the following plea agreement:

1.    **The Parties.**    The parties to this agreement are the United States Attorney's

Office for the Western District of Missouri (otherwise referred to as "the Government" or "the

United States"), represented by Tammy Dickinson, United States Attorney, and Randall D.

Eggert, Assistant United States Attorney, and the defendant, Kenna Harmon ("the defendant"),

represented by Brian David Risley.

The defendant understands and agrees that this plea agreement is only between her and

the United States Attorney for the Western District of Missouri, and that it does not bind any

other federal, state or local prosecution authority or any other government agency, unless

otherwise specified in this agreement.

2.    **Defendant's Guilty Plea**.    The defendant agrees to and hereby does plead guilty

to Count 1 of the Second Superseding Indictment, charging her with a violation of 21 U.S.C. §

841(a)(1) and (b)(1)(A) and § 846, that is, Conspiracy to Distribute 500 Grams or More of a

Mixture or Substance Containing a Detectable Amount of Methamphetamine.    The defendant

agrees to and hereby does plead guilty to Count 2 of the Second Superseding Indictment, charging her with a violation of 18 U.S.C. § 1956(h), that is, Conspiracy to Commit Money Laundering. The defendant agrees to and hereby does plead guilty to Count 53 of the Second Superseding Indictment, charging her with a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), that is, Possession of a Firearm by Convicted Felon. The defendant also agrees to forfeit to the United States the property described in Forfeiture Allegations 7, 9, 10, and 14 of the Second Superseding Indictment. By entering into this plea agreement, the defendant admits that she knowingly committed these offenses, and is, in fact, guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

Concerning Count 1 of the Second Superseding Indictment, between June 1, 2013, through November 29, 2014, said dates being approximate, in Greene, Polk, Christian, Jasper, Laclede, and Webster Counties, in the Western District of Missouri and elsewhere, the defendant, KENNA HARMON, along with others named in the Second Superseding Indictment knowingly and intentionally conspired and agreed with each other to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841 (a)(1) and (b)(1)(A).

Beginning in 2012, the United States Drug Enforcement Administration (hereinafter DEA), assisted by the United States Internal Revenue Service (hereinafter IRS), the Missouri State Highway Patrol (hereinafter MSHP), the Springfield, Missouri, Police Department (hereinafter SPD), and the other affiliated law enforcement agencies, investigated a large scale methamphetamine distribution network in southwest Missouri involving several sources of supply both inside and outside of the State of Missouri. The leaders of this distribution network in southwest Missouri were identified as Daniel and Kenna HARMON. The HARMON Drug Trafficking Organization (hereinafter HARMON DTO) obtains pound amounts of methamphetamine from sources of supply in Kansas City, St. Louis, as well as from the State of Oklahoma, for distribution in the Springfield, Missouri, area.

2

In December of 2013, Daniel HARMON, was traffic stopped by law enforcement outside of St. Louis, Missouri. During a search of his vehicle, officers discovered approximately 4 pounds of methamphetamine, $60,000 in U.S. currency, and a handgun. Daniel HARMON was indicted in the United States District Court for the Eastern District of Missouri on April 9, 2014, with one count of possession of methamphetamine with intent to distribute, one count of being a felon in possession of a firearm, and a forfeiture allegation. Daniel HARMON was arrested and detained. On September 5, 2014, Daniel HARMON pleaded guilty to both counts and the forfeiture allegation.

After Daniel HARMON's detention and incarceration, Kenna HARMON continued to lead the HARMON DTO in its distribution of methamphetamine. Kenna HARMON directed the HARMON DTO to purchase large amounts of methamphetamine from various sources of supply, which included co-defendants Anthony VAN PELT and Kenneth FRIEND. Additionally, Kenna HARMON obtained methamphetamine from others sources of supply, and she would provide distributive amounts to VAN PELT and FRIEND as needed.

In addition to dealing with VAN PELT and FRIEND, Kenna HARMON provided distributive amounts of methamphetamine to other co-defendants, including, but not limited to, Anthony M. MASSONI, Anthony A. HATFIELD, Cheryl D. PALUCZAK, Joseph R. ALLEN, Kenneth A. HOFFMAN, DAVID L. MILLER, JR, Brandon A. HOUSE, Jeffrey L. HATCH, Gregory L. JONES a.k.a. "Pops," David A. FLOYD, Jeffrey M. GARDNER, and Heather L. COURTOIS. Kenna HARMON, in order to distribute the large amount of methamphetamine that she was responsible for selling, stored methamphetamine in several residences in Greene and Polk Counties, and directed several individuals to assist in maintaining those residences, including Joseph R. ALLEN and Heather L. COURTOIS. In total, the HARMON DTO was responsible for the distribution of over 45 kilograms of methamphetamine from June 1, 2013, through November 29, 2014.

During the investigation, DEA and IRS agents obtained authority from the United States District Court to conduct T-III wire intercepts on several of Kenna HARMON's telephones, as well as the telephone of co-defendant FRIEND. On November 27, 2014, officers intercepted telephone calls over a T-III intercept established on FRIEND's telephone, which led the officers to believe FRIEND was intending to purchase a large amount of methamphetamine from Kenna HARMON. As result of these telephone conversations, agents decided to traffic stop both Kenna HARMON and FRIEND as they left their respective residences to meet to engage in the methamphetamine distribution activity. Kenna HARMON was traffic stopped in her blue BMW 545i while traveling east bound at the 3000 block of West Sunshine, in Springfield, Greene County, Missouri. Kenna HARMON had just left her residence at 648 Dana, Republic, Greene County, Missouri. During the search of Kenna HARMON's vehicle, officers

3

discovered a small amount of methamphetamine, $4,604 in United States currency, and marijuana, all of which was found on either Kenna HARMON's person, or within the vehicle.

When Kenna HARMON left her Republic residence, agents conducting surveillance observed a black 2008 Ford Mustang was parked in the driveway. The Mustang was followed to 1906 S. Grant, Springfield, Greene County, Missouri, where SPD initiated a traffic stop on the vehicle. The vehicle pulled into a parking lot, and the driver of the vehicle, later identified as Anthony VAN PELT, fled from the vehicle. Nikki Pile was the front passenger of the vehicle and stayed with the vehicle. Pile identified VAN PELT as the driver of the vehicle. A search of the vehicle yielded approximately $23,663 in United States currency.

Due to the investigation, agents believed VAN PELT could have run to 1947 S. Missouri, Springfield, Greene County, Missouri, for which agents had already obtained a federal search warrant. SPD established a perimeter around the residence until a SPD entry team could respond to the residence. The SPD team made entry on the residence where they found VAN PELT in the master bedroom of the residence, hiding under a bed. VAN PELT was arrested. Inside the residence, agents found firearms in the master bedroom where VAN PELT was hiding. Approximately 1 pound of methamphetamine, marijuana, and $3,990 in United States currency were found in a hidden safe by the master bedroom. Agents, in the garage of the residence, found a duffel bag that contained approximately 20 pounds of marijuana and 2 additional pounds of methamphetamine.

After his arrest, VAN PELT provided a statement to law enforcement admitting that he obtained methamphetamine from a source of supply in Kansas City, Missouri, and then redistributed some of that methamphetamine to Kenna HARMON.

On November 27, 2014, a federal search warrant was executed at 648 Dana, Republic, Greene County, Missouri, one of the locations Kenna HARMON possessed methamphetamine. Agents found at the residence approximately $20,000 in United States currency, approximately 5 ½ pounds of methamphetamine, and a loaded handgun a Jennings by Calwestco, model J-22, .22 caliber pistol, serial number 365743, found in a nightstand in Kenna HARMON's bedroom. The Calwestco pistol is related to Count 53 of the Second Superseding Indictment.

Also on November 27, 2014, surveillance was conducted at FRIEND's residence, 504 E. Sunshine, Springfield, Greene County, Missouri. Agents observed FRIEND and Donette DAVIS leave the residence together in a vehicle. A vehicle enforcement stop was conducted on the vehicle. A search of the

vehicle resulted in the seizure of approximately $34,310 of U. S. currency located in DAVIS's purse and FRIEND's wallet.

Agents then conducted a search of FRIEND's residence, pursuant to a federal search warrant. The search resulted in the seizure of a small amount of methamphetamine, two safes, a money counter, and a digital scale.

After his arrest, FRIEND was advised of his rights under Miranda and agreed to be questioned by law enforcement. FRIEND admitted that he obtained methamphetamine from HARMON for distribution and that the $35,000 discovered inside DAVIS's purse and FRIEND's wallet was money that FRIEND intended to provide HARMON in exchange for methamphetamine.

On November 28, 2014, agents executed a federal search warrant at 2250 East 515th Road, Halfway, Polk County, Missouri. According to wiretap interceptions from HARMON's telephones conducted during this investigation, HARMON is the owner of the property located at 2250 East 515th Road, and that she has built two residences on this property, one residence in which Joseph R. ALLEN, her brother, resides, and the other residence being built for herself.

During the execution of the search warrant on the residence in which ALLEN resided, located at 2250 East 515th Road, agents discovered ALLEN present inside the residence. ALLEN stated to the agents that he was staying at the residence. Also located inside the residence, agents discovered the personal effects of ALLEN such as clothes, inside the master bedroom of the residence. Agents noted that the master bedroom was the only bedroom inside the residence that contained a bed.

Inside the residence, agents also discovered 5 handguns, 4 of which were located inside ALLEN's vehicle found inside the garage of the residence, and the other firearm was located on the kitchen table. Agents also discovered 3 rifles in a spare bedroom of the residence.

Inside the master bedroom, agents discovered a false return vent, which contained a suitcase. Agents opened the suitcase and discovered inside two bundles each containing approximately one pound of a mixture or substance which field tested positive for the presence of methamphetamine. The total amount of the mixture or substance containing methamphetamine seized from ALLEN's bedroom is approximately 900 grams. Also inside the suitcase, agents discovered approximately 4 pounds of what appears to be high grade marijuana.

On November 28, 2014, agents talked to Michael Smith at Fine Rides at 1302 N. National, Springfield, Missouri, in reference to his involvement in the HARMON DTO. Smith stated that he was given approximately $10,000 in cash by HARMON to paint a pink and black Chevrolet truck, VIN

1GCEC14M0WZ204365, and white Tiburon, VIN KMHHN65F36U209380, owned by HARMON. The pink and black Chevrolet truck was at the shop during the interview of Smith. The truck was seized by agents.

On November 28, 2014, agents served a federal search warrant at 4375 N. Farm Road 185, Unit 130, Springfield, Greene County, Missouri. The unit had a contact name of Anthony MASSONI. During the search of the unit, agents found paperwork for a tattoo shop, Artistic Armor in Branson, Missouri. According to information gained in this investigation, the tattoo shop was owned by Kenna HARMON but was in the name of Anthony MASSONI in order to hide the asset from law enforcement.

On December 1, 2014, agents received information from a reliable Source of Information (SOI) that Kenna HARMON possessed a white Tiburon passenger car, at a storage unit at Classic Storage, located at 4375 N Farm Road 185, Springfield, Greene County, Missouri. Agents obtained a federal search warrant for Unit 238, and it was executed on December 2, 2014. Inside the storage unit agents found the Tiburon and $5,107 in United States currency.

On November 29, 2014, law enforcement agents traveled to MASSONI's residence at 801 W. Woodridge Springfield, Greene County, Missouri. Agents talked to Jennifer and Anthony MASSONI. Anthony MASSONI gave agents consent to search the residence. While searching the residence, the agents discovered a loaded Taurus .357 revolver lying on the couch in the living room along the north wall. Agents also found multiple safes inside the residence which Anthony MASSONI gave consent to the agents to search. No illegal contraband was found in these safes. Agents also discovered a Fortress brand safe located along the west wall of the living room of the residence. When agents asked Anthony MASSONI to open the Fortress brand safe, Anthony MASSONI attempted to open it by entering the pass code multiple times. When the safe failed to open, Anthony MASSONI stated that had forgotten the code. While Anthony MASSONI was trying to open the safe, Jennifer MASSONI stated Anthony MASSONI made her put her jewelry inside the safe every night. Anthony MASSONI then told the agents that there was an additional handgun inside the safe, along with $40,000 in United States currency and jewelry.

Agents then took custody of the Fortress brand safe, and it was transported to the Springfield Police Headquarters at 321 E. Chestnut Expressway Springfield, Missouri, where it was placed in a secured area. A federal search warrant was executed on the safe on December 3, 2014, and inside the safe agents discovered $37,000 in United States currency.

Concerning Count 2 of the Second Superseding Indictment, between at least as early as June 1, 2014, and continuing until November 28, 2014, said dates being approximate, in Polk and Greene Counties in the Western District of

Missouri, and elsewhere, the defendant, KENNA M. HARMON, did knowingly and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: (a) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to distribute methamphetamine, a Schedule II controlled substance, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and, (b) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to distribute methamphetamine, a Schedule II controlled substance, with the intent to promote the carrying on of that specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

During the course of the conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, as charged in Count 1 of the Second Superseding Indictment and beginning on or about June 1, 2014, and concluding on or about November 28, 2014, the defendant Kenna HARMON paid a total of approximately $324,185.07 for the construction of a residence located at 2250 E. 515th Road, Halfway, Polk County, Missouri. Kenna HARMON paid cash for the entire project. The entire amount of $324,185.07 which Kenna HARMON paid for the construction of the residence was from the proceeds from the unlawful sale of methamphetamine. The proceeds were paid in installments to a local building contractor that Kenna HARMON hired to build the residence. Kenna HARMON, told the building contractor that she had inherited the cash which she used to build the residence and purchase the land on which the residence was located. This, in fact, was not true, as Kenna HARMON received no large inheritance during this time, had no legitimate source of income, and all her money came from the unlawful sale of methamphetamine. HARMON informed the building contractor, and others, about the inheritance in order to conceal the true source of the proceeds used to construct the residence and purchase the land. While building the residence, HARMON used the property to promote her continued sale of methamphetamine by storing methamphetamine at the residence.

Kenna HARMON also agrees to the forfeiture of all property listed in Forfeiture Allegations 7, 9, and 10 which includes the following:

Real property located at 2250 E. 515th Road, Half Way, Polk County, Missouri, with all appurtenances, improvements, and attachments thereon. The legal description of this property is as follows:

Lot C in Way-Forty, a Subdivision in Polk County, Missouri according to the plat recorded in Plat Book 6 at Page 47 of the Polk County Recorder's Office Parcel ID: 89-16-0.5-15-000-000-005.03;

Bracelets seized from Kenna HARMON on or about November 27, 2014;

Approximately $20,000 in United States currency, seized on or about September 4, 2014;

Approximately $37,000 in United States currency, seized on or about December 3, 2014, from Anthony MASSONI;

A 2005 Mazda 6 Sedan, VIN #1YVHP80D255M57560, bearing Missouri registration AH9A7S. The vehicle is titled in the name of Joseph ALLEN, and was seized on or about December 19, 2014;

The defendant Kenna HARMON agrees that all the above listed property was used by Kenna HARMON, and others, to promote the conspiracy to distribute methamphetamine, or were obtained from proceeds derived from the conspiracy to distribute methamphetamine, or in relation to the Calwestco, was possessed while she was a convicted felon.

Kenna HARMON has also been convicted of a prior felony drug offense. On or about September 9, 2005, in the Circuit Court for Christian County, Missouri, Kenna HARMON was convicted of Distribution of Methamphetamine in Case No. 04N8-CR01848. The effect of the prior conviction relating to controlled substances is that the defendant is subject to a mandatory minimum sentence of 20 years imprisonment on Count 1and other punishments as set forth in Title 21, United States Code, Section 841(a)(1) and (b)(1)(A).

With regard to the real property which is the subject of Forfeiture Allegation One, HARMON acknowledges that Herrman Lumber has a mechanics lien in the amount of $4,145.92, plus contractual and statutory interest and attorney fees which are due and owing to Herrman Lumber from the contractor. This mechanics lien is the subject of a lawsuit filed in the 30th Judicial Circuit Court, Polk County, Missouri, Case Number 15PO-CC00057. HARMON admits that she purchased this real property by making cash payments from the drug proceeds to Michael Smith beginning on or about March 9, 2014. Smith could

not transfer the deed to HARMON because his ex-wife would not sign the paperwork for the sale.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which she is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon her plea of guilty to Count 1 of the Second Superseding Indictment, charging her with Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, the minimum penalty the Court may impose is not less than 20 years' imprisonment, while the maximum penalty the Court may impose is not more than life imprisonment, 10 years' supervised release, a $20,000,000 fine, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony. The defendant understands that, upon her plea of guilty to Count 2 of the Second Superseding Indictment, charging her with Conspiracy to Commit Money Laundering, the maximum penalty the Court may impose is not more than 20 years' imprisonment, 3 years' supervised release, a $500,000 fine, and a $100 mandatory special assessment per felony count of conviction, which must be

9

paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony. The defendant understands that, upon her plea of guilty to Count 53 of the Second Superseding Indictment, charging her with Possession of a Firearm by Convicted Felon, the maximum penalty the Court may impose is not more than 10 years' imprisonment, 3 years' supervised release, a $250,000 fine, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6.     **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

   a.     in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

   b.     the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

   c.     in addition to a sentence of imprisonment, the Court may impose a term of supervised release of at least 10 years for Count 1 and up to 3 years for Count 2;

   d.     if the defendant violates a condition of her supervised release, the Court may revoke her supervised release and impose an additional period of imprisonment of up to 2 years on Counts 2 and 53 without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release as to Counts 2 and 53, the length of which cannot exceed 3 years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

   e.     the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f.    any sentence of imprisonment imposed by the Court will not allow for parole;

g.    the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h.    the defendant may not withdraw her guilty plea solely because of the nature or length of the sentence imposed by the Court.

i.    The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that she will not contest any such forfeiture proceedings.  The following assets which were included in the Second Superseding Indictment have been administratively forfeited by DEA:

Approximately $4,604 in United States currency, seized from Kenna HARMON's vehicle on or about November 27, 2014;

A 2004 Chevrolet Avalanche, VIN #3GNEK12T84G210528, bearing Missouri registration 1UV432, seized on or about November 28, 2014. The vehicle is titled in the name of Ruth Ann Gross, Kenna HARMON's mother, with a Transfer on Death provision to "Grant Kaedin," Kenna HARMON's son;

A 2004 BMW—5 Series, VIN #WBANB33594B113218, seized on or about November 27, 2014. The vehicle is titled in the name of Ruth Ann Gross, Kenna HARMON's mother, with a Transfer on Death provision to "Grant Kayden," Kenna HARMON's son;

A 2001 Harley-Davidson motorcycle, VIN #1HD4CJM141K115979; titled in MASSONI's name, and seized from Kenna HARMON's property in Polk County, Missouri, on or about November 28, 2014;

A 2006 Hyundai Tiberon, VIN #KMHHN65F36U209380, seized on or about December 2, 2014. The vehicle is titled in the name of Joseph ALLEN; and

A Jennings by Calwestco, model J-22, .22 caliber pistol, serial number 365743 seized from HARMON on or about November 27, 2014.

No further action on the part of the United States will be required to complete forfeiture of these assets;

11

j.      The defendant agrees to forfeit all interests she owns or over which she exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States, either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including but not limited to the following specific property:

Real property located at 2250 E. 515th Road, Half Way, Polk County, Missouri, with all appurtenances, improvements, and attachments thereon. The legal description of this property is as follows:

Lot C in Way-Forty, a Subdivision in Polk County, Missouri according to the plat recorded in Plat Book 6 at Page 47 of the Polk County Recorder's Office Parcel ID: 89-16-0.5-15-000-000-005.03;

Bracelets seized from Kenna HARMON on or about November 27, 2014;

Approximately $20,000 in United States currency, seized on or about September 4, 2014;

Approximately $37,000 in United States currency, seized on or about December 3, 2014, from Anthony MASSONI; and

A 2005 Mazda 6 Sedan, VIN #1YVHP80D255M57560, bearing Missouri registration AH9A7S. The vehicle is titled in the name of Joseph ALLEN, and was seized on or about December 19, 2014;

With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k.      The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which she, her co-defendants and her co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from June 1, 2013, to the present.  The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

l.      The defendant agrees not to contest the transfer of the property listed in paragraph j, above, from any state or local agency to the United States, and to take whatever steps are necessary to facilitate that transfer.  The defendant specifically agrees and authorizes any state or local law enforcement agency

12

having possession of property subject to federal forfeiture to release the property to a federal agency, either prior to or after entry of an order forfeiting the defendant's interest in such property. Further, the defendant agrees to hold harmless any state or local law enforcement agency which releases such property to any federal agency for federal forfeiture proceedings;

m.      The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before her sentencing;

n.      The defendant states that she is the sole and rightful owner of the property listed in paragraph j, above, or have a possessory interest in the property, and that, to the best of her knowledge, no one else has any ownership or other interest in the property superior to hers. In the event any federal, state or local law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest she has in such property and consents to the destruction or any other disposition of the property by the federal, state or local agency without further notice or obligation whatsoever owing to the defendant;

o.      Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit  (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility; and

p.      At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution.

7.      **Government's Agreements.**  Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to Count 1 and Count 2 of the Second Superseding Indictment for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss Counts 15, 51-53, and Forfeiture Allegation 14 at sentencing.   The United States also agrees to

13

dismiss the original indictment and the first superseding indictment filed against the defendant. The United States agrees to limit its sentencing request to between 20 to 25 years imprisonment, as to both Counts 1 and 2, with the sentences to be served concurrently, at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives her right to challenge the initiation of the dismissed or additional charges against her if she breaches this agreement. The defendant expressly waives her right to assert a statute of limitations defense if the dismissed or additional charges are initiated against her following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of her criminal activities. The defendant

14

understands these disclosures are not limited to the counts to which she has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9.      **Withdrawal of Plea.**  Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw her pleas of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts her pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, she will not be permitted to withdraw her pleas of guilty.

10.     **Agreed Guidelines Applications.**  With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

> a.      The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

15

b. The applicable Guidelines sections for the offense of conviction for Count 1 is U.S.S.G. § 2D1.1 and for Count 2 are §§ 2S1.1(a)(1) and 2S1.1(b)(2)(B) and for Count 53 is § 2K2.1.

c. The parties have no agreement as to applicable sentencing enhancements in this case;

d. The defendant has admitted her guilt and clearly accepted responsibility for her actions, and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, she is entitled to a 3-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty pleas, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine her applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw her plea of guilty;

g. The parties agree to a joint recommendation of a sentencing range between 20 to 25 years imprisonment for both Counts 1 and 2, with the sentences to be run concurrently, at the time of sentencing. The agreement by the parties is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and

Case 6:14-cr-03106-MDH Document 560 Filed 03/18/16 Page 16 of 23

enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

      i.      The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

11.      **Effect of Non-Agreement on Guidelines Applications.**  The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12.      **Change in Guidelines Prior to Sentencing.**  The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13.      **Government's Reservation of Rights.**  The defendant understands that the United States expressly reserves the right in this case to:

      a.      oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

      b.      comment on the evidence supporting the charges in the indictment;

      c.      oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed, and that the United States remains free on appeal or collateral proceedings to defend the legality and

17

propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

d.      oppose any post-conviction motions for reduction of sentence, or other relief.

14.      **Waiver of Constitutional Rights.**      The defendant, by pleading guilty, acknowledges that she has been advised of, understands, and knowingly and voluntarily waives the following rights:

a.      the right to plead not guilty and to persist in a plea of not guilty;

b.      the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

c.      the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d.      the right to confront and cross-examine the witnesses who testify against her;

e.      the right to compel or subpoena witnesses to appear on her behalf; and

f.      the right to remain silent at trial, in which case her silence may not be used against her.

The defendant understands that, by pleading guilty, she waives or gives up those rights and that there will be no trial. The defendant further understands that, if she pleads guilty, the Court may ask her questions about the offenses to which she pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making a false statement. The defendant also understands that she has pleaded guilty to felony offenses and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

18

15.     **Waiver of Appellate and Post-Conviction Rights.**

a.      The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

b.      The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16.     **Financial Obligations.**   By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

a.      The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the indictment which are to be dismissed and all other uncharged, related criminal activity;

b.      The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

c.      The defendant will fully and truthfully disclose all assets and property in which she has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

d.      Within ten (10) days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information

19

that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

e.    At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution;

f.    The defendant hereby authorizes the USAO to obtain a credit report pertaining to her to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

g.    The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $300 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of her fulfillment of this obligation at the time of sentencing;

h.    The defendant certifies that she has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; or (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that she will make no such transfers in the future; and

i.    In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17.    **Waiver of FOIA Request.** The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including,

20

without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her plea of guilty.

The defendant also understands and agrees that, in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by her before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and

21

approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorneys, or any other party to induce her to enter her plea of guilty.

21. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their

22

normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

**Tammy Dickinson**
United States Attorney

By

Dated: _03/17/2016_

*/s/ Randall D. Eggert*
RANDALL D. EGGERT
Assistant United States Attorney
Missouri Bar No. 39404

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Second Superseding Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: _03/17/2016_

*/s/ Kenna Harmon*
KENNA HARMON
Defendant

I am defendant Kenna Harmon's attorney. I have fully explained to her her rights with respect to the offenses charged in the Second Superseding Indictment. Further, I have reviewed with her the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with her. To my knowledge, Kenna Harmon's decision to enter into this plea agreement is an informed and voluntary one.

Dated: _03/17/2016_

*/s/ Brian David Risley*
BRIAN DAVID RISLEY
Attorney for Defendant